Charles E. Hovey, as Survivor, etc., Appellant, *v.* George Elliott et al., as Executors, etc., et al., Respondents.

The provision of the United States Revised Statutes (§ 725), providing that the United States courts shall have power to punish "by fine or imprisonment, at the discretion of the court, contempt of their authority," limits the power to the modes of punishment specified and operates as a negation of any other method.

The said provision applies to the Supreme Court of the District of Columbia.

The said court having been created by act of congress, not by the Constitution, congress may restrict and limit the exercise of its power in the respect specified, and this although it may have given it general jurisdiction in law and equity.

The said provision applies to civil as well as to criminal contempts.

Plaintiff's firm filed a bill in said court to enforce an alleged lien upon an award. R., a member of the firm of R. & Co., bankers, was appointed receiver, and a portion of the award, sufficient to meet plaintiff's claim, was paid over to him. Pursuant to the directions of the court, the receiver invested the fund in certain bonds. The defendants demurred to plaintiff's bill, the demurrer was sustained and a decree entered dismissing the bill and directing the receiver to pay over the funds in his hands to the defendants. R. thereupon delivered the bonds to defendants, who on the same day sold them for full value to R. & Co. The decree was reversed on appeal, an answer was interposed, and pending the trial of the issues defendants were adjudged in contempt for disobedience of an order of the court, their answer ordered to be stricken

out, and thereupon a judgment *pro confesso* was entered adjudging that plaintiffs had a lien upon the bonds. In an action based on said judgment, brought against R. & Co. to enforce the lien, it did not appear that they had any notice of the contempt proceedings. *Held*, that the court had no jurisdiction to strike out the answer; that said judgment was void as against R. & Co.; that as purchasers *pendente lite* they took the risk of the litigation then pending, but did not assume the risk of any punishment inflicted on the defendants therein in an independent proceeding; and so, that the complaint herein was properly dismissed.

(Argued January 31, 1895 ; decided February 26, 1895.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made October 27, 1892, which affirmed a judgment in favor of defendants entered upon the report of a referee dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert B. Titus* for appellant. If the decree in *Hovey* v. *McDonald* was assailable for the reasons stated by the referee, the remedy of the defendants was by direct review in the Supreme Court of the United States. Having failed to pursue that remedy, they and their privies are now estopped from collateral attack upon the decree. (*Dowell* v. *Applegate*, 152 U. S. 327 ; *Pepke* v. *Cronin*, 155 id. 100 ; *New York* v. *Eno*, Id. 89 ; *In re Fonda*, 117 id. 516 ; *Cooper* v. *Reynolds*, 10 Wall. 308 ; *D. M. A. Co.* v. *I. H. Co.*, 123 U. S. 559 ; *Gray* v. *Brignardello*, 1 Wall. 634 ; *Comstock* v. *Crawford*, 3 id. 404 ; *Thompson* v. *Tolmie*, 2 Pet. 163 ; *Ex parte Watkins*, 3 id. 193–207 ; *McCormack* v. *Sullivan*, 10 Wheat. 192–199 ; *Cornett* v. *Williams*, 20 Wall. 226 ; *Kempe* v. *Kennedy*, 5 Cranch, 173–185 ; *Skillen* v. *May*, 6 id. 267 ; *Nogue* v. *Clapp*, 101 U. S. 551 ; *Huling* v. *K. V. R. R. Co.*, 130 id. 559 ; *Graham* v. *B. R. R. Co.*, 118 id. 161 ; *Ex parte Bigelow*, 113 id. 325.) The Supreme Court of the District of Columbia made the regularity of its procedure in rendering this decree the subject of judicial determination ; it could be questioned, therefore, only in that court, or by

appeal. (*Ex parte Bigelow*, 113 U. S. 331; Black on Judg.
§ 274; *Cooper* v. *Reynolds*, 10 Wall. 308; *Voorhees* v. *Bank*,
10 Pet. 439; *S. L. R. R. Co.* v. *McBride*, 141 U. S. 130;
*Bryan* v. *Kennett*, 113 id. 180; *Holdane* v. *Sumner*, 15
Wall. 608.)   If the Supreme Court of the District of
Columbia exceeded its authority in ordering the answer of
McDonald and White to be removed from the files, that does
not affect the validity of the final decree. (*Comstock* v.
*Crawford*, 3 Wall. 404; *Huling* v. *K. V. R. R. Co.*, 130 U.
S. 559; *Mellen* v. *M. I. Works*, 131 id. 370; *Ex parte Bige-
low*, 113 id. 328; *Thompson* v. *Tolmie*, 2 Pet. 168; *Ex parte
Watkins*, 3 id. 173; *Voorhees* v. *U. S. Bank*, 10 id. 472;
*Grignon* v. *Astor*, 2 How. Pr. 335; *Florentine* v. *Barton*,
2 Wall. 215; *Harvey* v. *Tyler*, Id. 346; *Cooper* v. *Reynolds*,
10 id. 308; *Cornett* v. *Williams*, 20 id. 249; *Maxwell* v.
*Stewart*, 21 id. 73; *S. L. R. R. Co.* v. *McBride*, 141 U. S.
130; *Scofield* v. *Churchill*, 72 N. Y. 565; *Windsor* v.
*Mc Veigh*, 93 U. S. 274; *Walker* v. *Walker*, 82 N. Y. 261.)
The order of the Supreme Court of the District of Columbia,
removing the answer of the defendants for their contempt,
was within the power of the court, and was valid. (*Thompson*
v. *Wooster*, 114 U. S. 100, 104; *Hornbuckle* v. *Coombs*, 18 Wall.
654; *Clinton* v. *Englebrecht*, 13 id. 447; *McAllister* v. *U. S.*,
141 U. S. 174; *Hovey* v. *McDonald*, 109 id. 150; *Fuller* v.
*Claflin*, 93 id. 114.)   The validity of the final degree of the
Supreme Court of the District of Columbia in *Hovey* v.
*McDonald* has been sustained by the Supreme Court of the
United States. (*Hovey* v. *McDonald*, 109 U. S. 150; *R. Co.*
v. *Swan*, 111 id. 382.)   Plaintiff is entitled to final judgment
on this appeal. (*Riker* v. *Leo*, 115 N. Y. 104; *Riggs* v.
*Palmer*, Id. 514; *Wood* v. *Baker*, 60 Hun, 354; *Dam-
mert* v. *Osborn*, 140 N. Y. 30.)

*Everett P. Wheeler* for appellant.   The principal ground
of the contention for the respondents is that section 725 of the
United States Revised Statutes applies to the Supreme Court of
the District of Columbia, and that its effect is to absolutely

divest that court of the power to strike out an answer of a
defendant because of his disobedience to a previous order of
the court. This is untenable. (*Kendall* v. *U. S.*, 12 Pet. 524;
*U. S.* v. *Schurz*, 102 U. S. 378; *Clinton* v. *Englebrecht*, 13
Wall. 434.) The decree in the District of Columbia is not
based on contempt proceedings. (*Walker* v. *Walker*, 82 N.
Y. 260; *Brinkley* v. *Brinkley*, 47 id. 40; *Barker* v. *Barker*,
15 How. Pr. 568; *Farnham* v. *Farnham*, 9 id. 231; *Quigley*
v. *Quigley*, 45 Hun, 23.) The fifth amendment to the Con-
stitution of the United States provides that no person shall be
deprived of his " property without due process of law." This
means process adapted to the character of the case. It does
not mean that the practice in common-law cases shall be the
constitutional right of a defendant who is sued in a court of
admiralty or of equity. (*Walker* v. *Walker*, 82 N. Y.
260; *Simmons* v. *Saul*, 138 U. S. 439, 452; *Noble* v.
*U. R. L. R. R. Co.*, 147 id. 165, 174; *Thaw* v. *Ritchie*,
136 id. 519, 448; *Grignon* v. *Astor*, 2 How. Pr. 319;
*Thompson* v. *Wooster*, 114 U. S. 104; *Walker* v. *Walker*, 82
N. Y. 260; 20 Hun, 400; *Pitt* v. *Davison*, 37 N. Y. 235;
*El. L. Co.* v. *Superior Court*, 111 U. S. 410.) The judgment
in *Hovey* v. *McDonald* is conclusive even if erroneous or
irregular. (*O. Co.* v. *Compania Espanola*, 134 N. Y. 46;
*Rocco* v. *Hackett*, 2 Bosw. 579; *Wineman* v. *Gastrell*, 53
Fed. Rep. 697, 703; *Bigelow* v. *Chatterton*, 51 id. 614, 620;
*C. Bank* v. *Bank of Santa Fe*, 32 Pac. Rep. 627; *City of
Paterson* v. *Baker*, 26 Atl. Rep. 324; *F. N. Bank* v. *Gene-
seo*, 32 Pac. Rep. 902; *State* v. *Morris*, 2 N. E. Rep. 355;
*Board of Guardians* v. *Shuter*, 34 id. 665; *Gates* v. *Pres-
ton*, 41 N. Y. 113; *Nemetty* v. *Naylor*, 100 id. 562; *Kinnier*
v. *Kinnier*, 45 id. 535; *Ferris* v. *Fisher*, 67 Hun, 135; *Austin*
v. *Austin*, 43 Ill. App. 488; *Gibbs* v *Southern*, 22 S. W.
Rep. 713; *Tracey* v. *Shumate*, 22 W. Va. 475; *Kent* v. *L.
S. Co.*, 144 U. S. 75; *Dowell* v. *Applegate*, 152 id. 327.) The
decision in this case made by the Second Division (118 N. Y.
124) controls the decision of the present appeal. (*Cluff* v.

*Day*, 141 N. Y. 580 ; *W. S. Bank* v. *Town of Solon*, 136 id. 465, 477 ; *Joslin* v. *Cowee*, 56 id. 626 ; *G. P. Co.* v. *Mayor*, *etc.*, 108 id. 278.) Defendants are bound by the judgment in District of Columbia, because purchasers *pendente lite*. (*Hovey* v. *Elliott*, 118 N. Y. 124 ; *Hovey* v. *McDonald*, 109 U. S. 150 ; *Tilton* v. *Cofield*, 93 id. 168 ; *Wright* v. *Tebbetts*, 91 id. 252.) The bonds are not negotiable. (*M. Bank* v. *N . Y. & N. H. R. R. Co.*, 13 N. Y. 599.) There was actual notice to Riggs & Co. Notice to one of several partners is notice to them all. (*Weetjen* v. *S. P. & P. R. R. Co.*, 4 Hun, 529 ; *S. Co.* v. *Hill*, 112 U. S. 185 ; *Lytle* v. *Lansing*, 147 id. 59.) The lien follows the proceeds of the bonds. (*Hovey* v. *Elliott*, 118 N. Y. 124 ; *V. S. Y. Bank* v. *Gillespie*, 137 U. S. 411 ; *N. Bank* v. *Ins. Co.*, 104 id. 54, 68 ; *I. & T. Bank* v. *Peters*, 123 N. Y. 272 ; *Holden* v. *N. Y. & E. Bank*, 72 id. 286, 296 ; *Deobold* v. *Offermann*, 111 id. 531 ; *Moore* v. *Williams*, 62 Hun, 55.) Plaintiffs are not entitled to final judgment. (Code Civ. Pro. §§ 994, 998, 1317 ; *Born* v. *Schrenkeisen*, 110 N. Y. 55, 60 ; *Jackson* v. *Andrews*, 59 id. 244 ; *Stoddard* v. *Whiting*, 46 id. 627 ; *Wood* v. *Baker*, 60 Hun, 337 ; *Moore* v. *Williams*, 62 id. 55.)

*John Selden* and *William G. Choate* for respondents. The plaintiffs wholly failed to make proof of the existence of their lien on the bonds purchased by Riggs & Co. of McDonald and White. The only evidence offered of the existence of the lien was the alleged decree of the Supreme Court of the District of Columbia, entered on the 17th day of April, 1878. That decree was absolutely void and a nullity. (*Kendall* v. *U. S.*, 12 Pet. 524 ; *Ex parte Bradley*, 7 Wall. 364 ; *U. S.* v. *Schurz*, 102 U. S. 378 ; *Page* v. *Burnstine*, 102 id. 664 ; *The City of Panama*, 101 id. 560 ; *McAllister* v. *U. S.*, 141 id. 184 ; *Embry* v. *Palmer*, 107 id. 3 ; *Anderson* v. *Dunn*, 6 Wheat. 227 ; *Ex parte Robinson*, 19 Wall. 505 ; *I. C. Co.* v. *Brimson*, 154 U. S. 489 ; *Fuller* v. *Claflin*, 93 id. 16 ; *Mc Veigh* v. *U. S.*, 11 Wall. 267 ; *Fanshaw* v. *Tracy*, 4 Biss. 498 ; *Gross* v. *Clark*, 87 N. Y. 272 ; *Brinkley* v. *Brinkley*,

47 id. 50; *Williams* v. *Barry,* 8 How. [U. S.] 542; *Bigelow* v. *Forrest,* 9 Wall. 351; *In re Frederich,* 149 U. S. 76; *In re Bonner,* 151 id. 242; *Ex parte Reed,* 100 id. 23; *In re Mills,* 135 id. 270; *Elliott* v. *Peirsoll,* 1 Pet. 340, 341; *Hickey* v. *Stewart,* 3 How. [U. S.] 762; *Williams* v. *Berry,* 8 id. 540, 543; *Thompson* v. *Whitman,* 18 Wall. 467, 468; *Kilbourn* v. *Thompson,* 103 U. S. 168, 198; *Ex parte Lange,* 18 Wall. 176; *U. S.* v. *Walker,* 109 U. S. 267; *In re Nielsen,* 131 id. 182, 183, 184; *Griffith* v. *Frazier,* 8 Cr. 23, 26; *Johnson* v. *Pinney,* 1 Paige, 646; *Rogers* v. *Patterson,* 4 id. 455; *Ellingwood* v. *Stevenson,* 4 Sandf. Ch. 368; *Krom* v. *Hogan,* 4 How. Pr. 226; *Field* v. *Chapman,* 13 Abb. Pr. 330; *Barker* v. *Barker,* 15 How. Pr. 568; *Brisbane* v. *Brisbane,* 67 id. 184; *Walker* v. *Walker,* 20 Hun, 400; 82 N. Y. 260, 263, 264.) Even if the pecuniary penalties or fines imposed upon parties by reason of their contempt were regarded, in whole or in part, as purely civil remedies, this decree of the Supreme Court of the District of Columbia would still be void as violating the fifth amendment of the Constitution of the United States and depriving the defendants, McDonald and White, of their property without due process of law. (*Murray* v. *H. L. & I. Co.,* 18 How. [U. S.] 277; *Dent* v. *West Virginia,* 129 U. S. 123, 124; *M. P. R. Co.* v. *Humes,* 115 id. 519; *Ex parte Wall,* 107 id. 289; *Hurtado* v. *California,* 110 id. 535; *Hagar* v. *R. Dist.,* 111 id. 708; *McVeigh* v. *U. S.,* 11 Wall. 267; *Ensminger* v. *Powers,* 108 U. S. 301; *Sabariego* v. *Maverick,* 124 id. 292, 293.) Whatever may be the conclusion of the court as to the power to punish McDonald and White in the manner adopted by the Supreme Court of the District of Columbia, the judgment or decree so entered against them is not binding upon Riggs & Co., even if they are considered to be purchasers of the bonds *pendente lite.* (*State* v. *Matthews,* 37 N. H. 454; *B. & O. R. R. Co.* v. *City of Wheeling,* 13 Gratt. 40; *W. A. & G. S. P. Co.* v. *Sickles,* 24 How. [U. S.] 341, 342; *Aurora City* v. *West,* 7 Wall. 102; *Lyon* v. *P. M. Co.,* 125 U. S. 700; *Reynolds* v. *Stockton,* 140 id. 270.) Riggs & Co. were not

purchasers *pendente lite*. (*Memphis* v. *Brown*, 94 U. S. 715; *Secombe* v. *Steele*, 20 How. [U. S.] 105; *Miller* v. *Sherry*, 2 Wall. 250; *French* v. *Hay*, 22 id. 248; Story's Eq. Pl. § 904; 1 Dan. Ch. Pr. 402, 403; *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Leitch* v. *Wells*, 48 N. Y. 585; *Holbrook* v. *Zinc Co.*, 57 id. 616; *Burgess* v. *Seligman*, 107 U. S. 33.) The plaintiffs' cause of action, if they ever had one, was barred by the six years' limitation, and accrued when Riggs & Co. finally disposed of the bonds in December, 1875. (118 N. Y. 144.) The question of the negotiability of the bonds, which was a distinct ground of defense, seems not to be open upon this appeal, unless the court should deem the bonds on their face negotiable securities, as the referee has found against the defendants on this issue as a question of fact. (*Goodman* v. *Harvey*, 4 Ad. & El. 870; *Murray* v. *Lardner*, 2 Wall. 121; *Brown* v. *Spofford*, 95 U. S. 478; *Shaw* v. *R. R. Co.*, 101 id. 564; *D. C. Ins. Co.* v. *Hachfield*, 73 N. Y. 228; *White* v. *V. R. R. Co.*, 21 How. [U. S.] 575.) The validity of the decree of April 17, 1878, was not passed on in the decision reported 109 U. S. 150. (*Lyon* v. *P. M. Co.*, 125 U. S. 700; *W., etc., S. P. Co.* v. *Sickles*, 24 How. [U. S.] 341, 342; *Aurora City* v. *West*, 7 Wall. 102; *Canter* v. *A. & O. Ins. Co.*, 2 Pet. 554; *Nelson* v. *Leland*, 22 How. [U. S.] 48; *B. Co.* v. *Higgins*, 114 U. S. 263, 264; *Peper* v. *Fordyce*, 119 id. 471, 472; *Everhart* v. *Huntsville College*, 120 id. 223; *Blacklock* v. *Small*, 127 id. 96, 105; *Metcalf* v. *Watertown*, 128 id. 586, 590; *Cohen* v. *Virginia*, 6 Wheat. 412; *Hans* v. *Louisiana*, 134 U. S. 20; *Lovell* v. *Cragin*, 136 id. 151; *W., etc., R. R. Co.* v. *Barney*, 113 id. 621; *Gray* v. *Brignardello*, 1 Wall. 627; *Gilman* v. *Philadelphia*, 3 id. 713.)

Haight, J. This action was brought to have the defendants' testator adjudged to be a trustee of certain bonds for the benefit of the plaintiffs and that they have a lien thereon and that the defendants account to them therefor.

In September, 1873, the mixed commission on British and American claims, sitting at the city of Washington, awarded

to one Augustin R. McDonald the sum of $197,000 in satisfaction of his claim for cotton destroyed during the war of the rebellion. In the following October the plaintiffs filed in the Supreme Court of the District of Columbia a bill in equity against McDonald and one William White, his assignee, for the sum of $49,297.50, alleging therein that McDonald was indebted to them under an agreement whereby, in consideration of services to be rendered in the prosecution of such claim, they were to receive a sum equal to twenty-five per centum of the amount that should be recovered and that they have a lien to the extent of such sum upon the award in his favor. Such proceedings were thereafter had that one George W. Riggs, a banker in the city of Washington, was appointed receiver, and one-half of the sum so awarded was paid over to him as such to meet the claim and lien of the plaintiffs. As such receiver and pursuant to the directions of the court, he invested the funds in certain bonds of the District of Columbia guaranteed by the United States and payable at its treasury. The defendants then interposed a demurrer to the plaintiffs' bill, which was sustained, and on the 24th day of June, 1875, a decree was entered dismissing the plaintiffs' bill, with costs. On the same day the plaintiffs entered an appeal from the decree to the General Term of the Supreme Court of the District of Columbia. On June 28th, 1875, another decree was entered in precise conformity with the former decree, but supplemented by a direction to the receiver to pay to the defendants McDonald and White the funds in his hands as such receiver. On the same day McDonald and White called upon the receiver and demanded the bonds in question. He thereupon first consulted with the judge holding the court in which the decree was entered, and, after being advised by such judge that the bonds should be surrendered, he delivered them over to McDonald and White, who on the same day sold and delivered the bonds for full value to the banking firm of Riggs & Co., of which the receiver was a partner. Riggs & Co. then surrendered the bonds to the treasury of the United States,

receiving new bonds therefor, which were thereafter sold and delivered to various purchasers.

On July 2d, 1875, the plaintiffs took an appeal to the General Term of the Supreme Court of the District of Columbia from the decree of June 28, 1875, and on March 4, 1876, that decree, as well as the one that preceded it, was reversed and the cause was remanded to the Special Term, with leave to the defendants to answer. An answer was then interposed, and upon the issues' raised thereby testimony was taken at divers times during the years 1876 and 1877. On the 15th day of June, 1877, plaintiffs obtained an order from the Supreme Court of the District of Columbia, requiring the defendants McDonald and White to pay over to the registry of the court the sum which had been delivered to them by the receiver. This order was not complied with, and thereupon the plaintiffs moved that the defendants McDonald and White show cause why they and each of them should not be punished as for a contempt; and such proceedings were thereupon had that they were adjudged to be guilty of a contempt, and that the answer filed by them in the cause be stricken out and removed from the files of the court. Judgment was thereafter entered against them *pro confesso* adjudging that the plaintiffs had a lien upon the bonds.

This action is based upon the judgment so entered, and is prosecuted upon the theory that notice to Riggs of the pendency of the action was notice to all of his partners. (*Weetjen* v. *St. P. & P. R. R. Co.*, 4 Hun, 529; 3 Kent Com. 105.) The defendants' testator resided in the city of New York, and was one of the members of the banking firm of Riggs & Co. He only was served with summons in this action.

The referee has found, as conclusions of law, " first, that in order to enable the plaintiffs to sustain this action the decree rendered by the Supreme Court of the District of Columbia must be a valid decree, binding upon the defendants; second, that from the operation of that decree the defendants in this action enjoy exemption and immunity under section 725 of the Revised Statutes of the United States; third, that from

the effect and operation of the decree the defendants enjoy immunity and exemption under that provision of the fifth amendment to the Constitution of the United States, which prohibits the deprivation of property without due process of law ; fourth, that the Supreme Court of the District of Columbia had no jurisdiction to render the said decree and that the same was and is null and void," etc.

As to the first · conclusion of law the parties agree.  The controversy is in reference to the other three.  The third conclusion is based upon the fifth amendment to the Constitution of the United States, which prohibits the deprivation of persons of property without due process of law.  Inasmuch as the consideration of what is due process of law will to some extent be involved in the determination of the validity of the judgment upon which this action is based, we only deem it necessary to consider the second and fourth conclusions of law found by the referee.  We shall also, for the purpose of this review, assume, without deciding the question, that Riggs & Co. were purchasers of the bonds *pendente lite*, with knowledge of the existence of the suit, although it appears that the purchase was made after judgment, for full value, in good faith, under the supposition that they had the right to purchase freed from all liens, and that they had no notice that an appeal had been taken.  Considering them as such purchasers, were they bound by the determination made in the action then pending ?  Section 725 of the United States Revised Statutes provides that :

" The said courts (referring to the courts of the United States) shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority : Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, wit-

ness or other person, to any lawful writ, process, order, rule, decree or command of the said courts."

Under this statute the referee has reached the conclusion that the Supreme Court of the District of Columbia had no power to punish the defendants for a contempt by striking out their answer and adjudging that the plaintiffs had a lien upon the bonds.

In *Ex parte Robinson* (19 Wall. 512) Field, J., in delivering the opinion for the court, says : "The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject they became possessed of this power, but the power has been limited and defined by the act of Congress of March 2, 1831. The act in terms applies to all courts. Whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may, perhaps, be a matter of doubt, but that it applies to the Circuit and District Courts there can be no question. These courts were created by an act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempt may be inflicted. It limits the power of these courts in this respect to three classes of cases. \* \* \* The law happily prescribes the punishment which the court can impose for contempts. The 17th section of the Judiciary Act of 1789 declares that the courts shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treating it as

a punishment for a contempt, was, therefore, unauthorized
and void."

In *Anderson* v. *Dunn* (6 Wheat. 204–227) JOHNSON, J.,
says : " It is true that the courts of justice of the United
States are vested by express statute provision with power to
fine and imprison for contempt.  *  *  *  It is a legislative
assertion of this right as incidental to the grander judicial
power, and can only be considered authority as an instance of
abundant caution, or a legislative declaration that the power
of punishing for contempt shall not extend beyond its known
and acknowledged limits of fine and imprisonment."

In *U. S. ex rel. D. & N. O. Ry. Co.* v. *Atcheson, T. & S.
F. Ry. Co.* (16 Fed. R. 853) McCRARY, J., says : " The
power of the court is limited to the punishment of the party
charged with contempt, and under the provisions of section
725 of the Revised Statutes of the United States such punish-
ment must be by fine or imprisonment.  That section pro-
vides that Circuit Courts shall have power to punish by fine
or imprisonment, at the discretion of the court, contempts of
their authority.  This enactment, says the Supreme Court, is
a limitation upon the manner in which the power may be
exercised, and must be held to be a negation of all other
modes of punishment."  (Citing *Ex parte Robinson, supra.*)

In *U. S. ex rel. South. Ex. Co.* v. *Memphis & Little Rock
R. Co.* (6 Fed. R. 237–239) HAMMOND, J., says :  " Obedience
to an injunction against privileged persons and corporations
was sometimes enforced by sequestration, which placed the
property of the contemnor in custody until obedience was
given.  (2 Daniell Ch. Pr. [5th ed.] 1685, 1687 ; 2 Bish.
Cr. L. [6th ed.] §§ 241, 273 ; *Spokes* v. *Banbury Board of
Health,* L. R. [1 Eq.] 42, and cases cited by these authorities.)
Our Revised Statutes, taken from the act of March 2, 1831,
c. 99, and prior acts of Congress, have prescribed the mode of
punishment, and directed that it shall be by fine or imprison-
ment, and this operates as a negation of all other modes of
punishment."  (See, also, *In re Cary,* 10 Fed. R. 622, 625 ;

SICKELS — VOL. C.     18

*In re Graves*, 29 id. 60 ; *Interstate Commerce Com.* v. *Brim-son*, 154 U. S. R. 447–489 ; *Ex parte Bradley*, 7 Wall. 364.)

It may be that the cases above referred to are not in strict accord with the rule recognized in this state in which a court of equity may refuse to a party in contempt the benefit of proceedings pending in it when asked by him as a favor until he has purged himself of his contempt. (*Brinkley* v. *Brinkley*, 47 N. Y. 40 ; *Walker* v. *Walker*, 82 id. 260 ; *Gross* v. *Clark*, 87 id. 272.) But in this state the Supreme Court on its equity side is invested by the Constitution with all the power and authority that formerly existed in the High Court of Chancery in England, the common law remaining in force excepting so far as it has been changed by statute. The legislature in this state, therefore, may not be able to limit or deprive the Supreme Court of any of its jurisdiction or powers.

Has the Supreme Court of the District of Columbia like jurisdiction and powers ? It was created by act of Congress and not by the Constitution. It consequently follows that Congress, which gave it life and invested it with power, may restrict and limit its exercise, and this notwithstanding the fact that it may have given it general jurisdiction in law and equity. To Congress is given the exercise of exclusive legislation in all cases whatsoever over such district as may by cession of particular states and the acceptance of Congress become the seat of goyernment of the United States. (U. S. Const. art. 1, § 17.) It may, therefore, create, empower, limit and remove. In creating the Supreme Court of the District of Columbia it was provided that it " shall possess the same powers and exercise the same jurisdiction as is now possessed and exercised by the Circuit Court of the District of Columbia, and the justices of the court so to be organized shall severally possess the powers and exercise the jurisdiction now possessed and exercised by the judges of said Circuit Court." (Act of March 3, 1863, 12 U. S. St. 762, ch. 91.) The Circuit Court of the District of Columbia and the judges thereof prior thereto had been invested with " all the powers by law vested in the Circuit Courts and the judges of the Cir-

cuit Courts of the United States." (2 U. S. St. ch. 15, § 3, p. 105.) And by the Judiciary Act of 1801, Feb. 13, it was provided "that the Circuit Courts shall have and hereby are invested with all the powers heretofore granted by law to the Circuit Courts of the United States, unless where otherwise provided by this act." (2 U. S. St. ch. 4, § 10.)

By the Judiciary Act passed September 24, 1789, it was provided that "the Circuit Courts shall have original cognizance, concurrent with the courts of the several states, of all suits. of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state. (1 U. S. St. ch. 20, § 11, p. 78.) This provision was re-enacted in the revision of 1873. (U. S. R. S. § 629.) In 1871 it was provided that "the Constitution and all the laws of the United States which are not locally inapplicable shall have the same force and effect within the said District of Columbia as elsewhere within the United States." (16 U. S. St. ch. 62, § 34, p. 426; § 93, R. S. of Dist. of Col.) By section 760 of the Revised Statutes of the District of Columbia it is provided that "the Supreme Court shall possess the same powers and exercise the same jurisdiction as the Circuit Courts of the United States."

It is thus apparent that the Supreme Court of the District of Columbia and the Circuit Courts of the United States are placed upon the same footing and invested with the same jurisdiction and powers, except as to the residence of parties. They are each given jurisdiction of suits of a civil nature at common law or in equity. Neither have common-law jurisdiction except that conferred by statute, and, consequently, each is controlled by subsequent legislation.

In 1801 the laws of Maryland were continued in force over that portion of the District of Columbia ceded to the government by that state, but this statute only remained in force in so far as it was not inconsistent with other statutes or not.

modified or repealed. (R. S. of Dist. of Col. § 92; 2 U. S. St. ch. 15, sec. 1, p. 104.)

Does section 725 of the Revised Statutes apply to the District of Columbia? Our attention has been called to no rule of the Supreme Court of the District of Columbia, or statute, that is in conflict with its provisions. It is not locally inapplicable, and under section 93 of the statute above referred to we see no reason why it is not given the same force and effect within the district that it has elsewhere within the United States. It may be that other sections of the same chapter may not apply to the District of Columbia, but it is because they are either locally inapplicable, or there are local rules or statutes covering the same subject-matter. (See *Hovey* v. *McDonald*, 109 U. S. R. 150, construing section 1007 of the U. S. R. S.) We consequently are of the opinion that section 725 of the Revised Statutes of the United States is in force in the District of Columbia, and, as construed by the United States courts, it restricts the Supreme Court of the District, in its punishment for contempt, to either a fine or imprisonment.

Was the decree entered in the action against McDonald and White void or was it merely voidable, and are the defendants in this action bound thereby? In 12 Am. & Eng. Ency. of Law at page 1470, under the head of judgments, it is said that "It is an axiom of the law that judgments entered without any jurisdiction are void and will be so held in a collateral proceeding, and there is a strong and growing tendency in all the courts to hold that although a court had jurisdiction over both the person and the subject-matter, but did not have jurisdiction to enter the particular judgment entered in the case, such judgment is void and may be collaterally impeached." (See note 3 thereunder, and note 1 on page 247.)

In *McVeigh* v. *The U. S.* (11 Wall. 259–267) a libel for information was filed in the District Court for the district of Virginia for the forfeiture of certain real and personal property of one William McVeigh. The libel alleged that he held an office under the Confederate government, and that he had

taken the oath of allegience to support the Constitution of that government. He appeared by counsel, made a claim to the property and filed an answer. The attorney for the United States moved that the claim, answer and appearance be stricken from the files upon the ground that he was at the time a resident of the city of Richmond within the Confederate lines and a rebel. The motion was granted, and subsequently his default was taken and a decree rendered *pro confesso* for the condemnation and sale of his property. The judgment was reversed in the Supreme Court. Justice Swayne, in delivering the opinion, says : "In our judgment the District Court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. As we are unanimous in this conclusion our opinion will be confined to that subject. The order, in effect, denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice."

In *Windsor* v. *Mc Veigh* (93 U. S. R. 274) the same question was again brought before the court under an action of ejectment to recover certain real property which had been acquired under the decree mentioned in the former case. Justice Field, in delivering the opinion of the court, says : "The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has the right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction. They are limited to particular classes of action, such as civil or criminal, or to particular modes of administering relief, such

as legal or equitable.  *  *  *  Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure and in the extent and character of its judgments.  It must act judicially in all things, and cannot then transcend the power conferred by the law.  If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant.  If the action be for libel, or for personal tort, the court cannot order in the case a specific performance of a contract.  If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will.  Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications.  The judgments mentioned, given in the cases supposed, would not be merely erroneous; *they would be absolutely void;* because the court in rendering them would transcend the limits of its authority in those cases."

In *Ex parte Lange* (18 Wall. 163–176) the prisoner had been convicted of the crime of stealing mail bags.  He was sentenced to one year's imprisonment and to pay a fine of $200, and was on the same day committed to jail in execution of his sentence.  On the following day he paid the fine.  The statute authorized imprisonment or fine.  It did not authorize both.  On the next day the prisoner was brought before the court and an order was entered vacating the former judgment and the prisoner was again sentenced to one year's imprisonment.  Mr. Justice MILLER, in delivering the opinion of the Supreme Court, says in reference thereto : " We are of the opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone.  *  *  *  It is no answer to this to say that the court had jurisdiction of the person of the prisoner and of the offense under the statute. It by no means follows that these two facts make valid, however

erroneous it may be, any judgment the court may render in such case. If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with a party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if, on an indictment for treason, the court should render a judgment of attaint whereby the heirs of the criminal could not inherit his property, which should, by the judgment of the court, be confiscated to the state, it would be void as to the attainder, because in excess of the authority of the court and forbid by the Constitution." (*Ex parte Fisk*, 113 U. S. R. 713–718; *In re Bonner*, 151 id. 242; *In re Mills*, 135 id. 263–270; *Ex parte Terry*, 128 id. 289–304; *Ex parte Reed*, 100 id. 13–23; *In re Frederich*, 149 id. 70–76; *Bigelow* v. *Forrest*, 9 Wall. 339. See, also, note entitled "Want of Authority under Jurisdiction Conferred," in *Morrill* v. *Morrill*, 11 L. R. A. 157.)

We have examined, but do not here refer to, the cases in which irregularities only appear in the judgments entered, in which it has been held that they are voidable only and cannot be attacked collaterally. The question presented may be close and upon the border, but we are inclined to the view that as to Riggs & Co. the judgment is void; that after the answer had been interposed by the defendants the court had no power to order judgment without a trial of the issues presented. In the language of Justice Field, above referred to, the court, although having jurisdiction of the case and of the parties, " is still limited in its modes of procedure and in the extent and character of its judgments."

Assuming that the members of the firm of Riggs & Co. purchased the bonds with notice of the pendency of the action, and that they took the same subject to the determination therein to be made, they had the right to have the questions at issue determined upon the merits. McDonald and

White were, as to them, assignors for value, and they had no power, by acts or declarations thereafter done or made, to impeach the title so transferred to Riggs & Co. McDonald and White could not, by fraud or collusion with the plaintiffs, impair their title, or, by a confession of judgment, deprive them of their rights to the bonds. Riggs & Co. were not parties to that action, and it does not appear that they ever had notice of the proceedings in contempt. As purchasers *pendente lite* Riggs & Co. took the risk of the litigation then pending, but in so doing did not assume the risk of any punishment that might be inflicted upon McDonald and White in an independent proceeding. (*Conner* v. *Reeves,* 103 N. Y. 527–532 ; *Ferguson* v. *Crawford,* 70 id. 253.)

It is contended that the decree striking out the defendants' answer was not based upon the proceedings in contempt ; but the proceedings, orders and decree do not support this contention. If the answer was not stricken out as a punishment for the contempt of which the defendants had been convicted, then by what authority were the defendants deprived of their right to a trial and a determination of the issues involved? Again, it is said that section 725 of the Revised Statutes has reference to criminal and not civil contempts, but no such distinction is found in the statute, or is made by the authorities construing the same.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.