PATRICK C. GRADY, MARGARET GRADY, AND ANGIE GRADY v. MICHAEL H. HUGHES.

*Probate court—Jurisdiction—Administrator's account—Review of decree of allowance—Appeal.*

1. The probate court has no power to *review* or *set aside* its *final* decree settling an administrator's final account on the merits. The statute has provided for an appeal from such decree to the circuit court, within a reasonable time, when either party shall desire a retrial on the merits.

   So *held*, in a case where, after the lapse of six years, certain of the heirs, some of whom were minors, petitioned the probate court to set aside the order of allowance and for a new accounting, on the ground of fraud on the part of the administrator upon the heirs and the court in the former accounting. The probate court dismissed the petition, which, on appeal, the circuit court entertained, and tried the issue presented.

2. The probate court derives none of its jurisdiction or powers from the common law, but must find the warrant for all its doings in the statute, such jurisdiction, powers, and duties being prescribed by law.

Error to Kent. (Montgomery, J.) Argued November 10, 1886. Decided January 27, 1887.

Petition for the review by the probate court of a final settlement of an administrator's account. Order of circuit

court on appeal reversed. The facts are stated in the opinions.

J. A. *Fairfield* (*Birney Hoyt*, of counsel), for petitioners:

The proceeding by petition in the probate court is the proper remedy: *Green v. Probate Judge*, 40 Mich. 244; *Brown v. Forsche*, 43 Id. 501; *Shelden v. Walbridge*, 44 Id. 251.

The jurisdiction of the probate court includes former jurisdiction of the court of chancery on the subjects of jurisdiction transferred to the probate court: *Campau v. Gillett*, 1 Mich. 419; *Palmer v. Oakley*, 2 Doug. 475; *People v. Wayne Circuit Court*, 11 Mich. 393; *Taff v. Hosmer*, 14 Id. 257.

*Edmund D. Barry* (*Norris & Uhl*, of counsel), for administrator:

In Ohio, by statute, the court of common pleas has power to vacate or modify its own judgments and orders, after the term at which made, for fraud, etc., which provision applies to the supreme and probate courts, so far as applicable to the judgments and final decrees of such courts. Yet it was held that the probate court had no power to vacate an order of allowance to an executor: *Johnson v. Johnson*, 26 Ohio St. 357; and see *Pettee v. Wilmarth*, 5 Allen, 144.

The petitioners have sought the wrong remedy. A court of equity might afford them relief, if they are entitled to any: *In re Hudson's Estate*, 63 Cal. 454; *Dean v. Superior Court*, Id. 473.

SHERWOOD, J.   Jeremiah Grady died intestate, in the city of Grand Rapids, on the fourteenth day of November, 1872, leaving as his heirs at law his widow, Isabella Grady, and five children, viz., Patrick C., Margaret, Angie, Frances H., and Mrs. Mary E. Adams. The eldest of the children, Patrick, was then 14 years old, and the youngest, Frances, was seven and one-half months old. The deceased left an estate consisting entirely of personal property, which was inventoried at the sum of $5,626.63.

On the third day of March following, on the petition and request of the widow, Michael H. Hughes, of the same city,

was duly appointed administrator of the estate, and duly qualified, and on that day entered upon the discharge of the duties of the trust.

On the fifth day of the same month, the widow, by the order of the judge of probate, was duly appointed guardian for the minor children, upon her own petition; the oldest child nominating her as such for himself. While this order was never revoked, and she acted as the children's guardian, and the administrator supposed she was doing so legally, and was properly appointed, she never filed any bond, and no letters were ever issued to her. Hughes proceeded with the administration of the estate, treating her all the time as guardian for the children, and as qualified to act for the minors. During the administration the widow's allowances were ordered by the judge of probate. Two hundred and eighty dollars and twenty-five cents of the personal property was assigned and set apart to her, and the administrator was directed to pay to the widow ten dollars per week during the progress and settlement of the estate.

The administrator filed his first account, February 12, 1874, and his final account was filed on March 29, 1878.

During the administration the widow desired to make an investment for the children from the money of the estate. The administrator had three lots in Grant's addition to the city of Grand Rapids, which he proposed to sell to her for $1,800, and after the widow had consulted with the judge of probate in the matter, with his approbation, she made the purchase, and the amount was credited to the administrator in his final accounting. There was also credited to him, upon said accounting, the amount of a note which he had paid, the same being $130, at the request of the widow, but which had never been allowed by the commissioners. There was also allowed to him in his account, at the suggestion of the probate judge, whose clerk made up the account, $100 for tombstone and $10 for a burial lot, which at the time the

account was settled had not been paid. The settlement was made upon the final account on the twenty-second day of April, 1878, after notice given for that purpose, and the account, as settled, showed a balance in favor of the administrator of $173.19; and thereafter the administrator received from the probate court his final discharge, dated the twenty-seventh day of June, 1883.

Frances H. Grady died December 26, 1877, and Mrs. Adams, who was a step-daughter, died in 1878.

On the fifth day of July, 1884, over six years after the administrator's final account was settled, and he discharged by the judge of probate, Patrick C. Grady, Maggie Grady, and Angie Grady filed their petition in the probate court in Kent county, wherein they allege "partly," as they say, "upon their own knowledge, and partly upon their information and belief," that the said account so settled and allowed "is false, fraudulent, and illegal, and made with an intent to cheat and defraud the estate of said Jeremiah Grady, deceased, and his heirs and distributees," accompanied by what they claim as specifications, and close with the following prayer, viz. :

"That the order of this court, made on the twenty-second day of April, 1878, that the said account of said administrator was correct and just, and ought to be allowed, and its allowance thereof by the said court, and all proceedings taken then and there in the premises, be set aside and held for naught, and that said administrator be cited to appear before this court, on a day to be named, to render an account in writing of his administration of said estate, and an itemized account of his receipts, expenditures, and disbursements."

In pursuance of a citation issued upon said petition, the administrator appeared, and filed his answer to the matters contained in the petition. A hearing was then had before the probate court, who, after hearing the proofs, all parties interested being represented, held that there appeared "no sufficient reasons to warrant the court in opening an account for so many years closed," and dismissed the petition.

From the order entered dismissing the petition, the petitioners appealed to the circuit court for the county of Kent, to which court the appeal was duly made. The petition, and answer of the respondent, were decided to be sufficient to present the issue to be tried, and, when the cause was called for trial, counsel for respondent moved to dismiss the appeal, on the ground "that the probate court had no jurisdiction in the premises, and also that the order appealed from was not appealable." The motion was overruled, counsel for respondent excepted, and the trial proceeded before the court. Among the witnesses examined were the respondent, the widow, and the petitioners. After the testimony closed, and the case was submitted, the court made 44 special findings of fact and law.

The following is one of the findings of fact, viz.:

"None of said lots, or any proceeds thereof, ever were had or received by said petitioners, or either of them, and the said charge of $1,800 is wholly fraudulent in law; and the inserting said charge in said account, and procuring the said probate court to allow the same, was a legal fraud; and the said order allowing said account, in which said charge was included, was and is illegal, unauthorized, and a legal fraud, and ought to be declared void."

And the following four paragraphs are contained among the findings of law:

"5. The said charge of $1,800 for a deed of said lots to Isabella Grady was not and is not a legal charge against the said estate. The administrator could not lawfully account for said $1,800 in his hands, belonging to said estate, by such deed.

"6. The said lots not being worth more than $1,200, the said disposition of said lots by such deed was a legal fraud.

"7. The making of said charge of $1,800 by said administrator, and procuring the same to be allowed, was and is a legal fraud upon the said probate court, and upon said petitioners.

"8. The said order allowing said final account should be vacated and set aside, and the said Michael H. Hughes be cited and required to appear before said probate court, on a

day to be named, to render his final account as administrator of said estate; and said cause should be remitted to the probate court, so that said court may take such further proceedings as shall be necessary for such purpose. And the said petitioners should recover their costs of this suit to be taxed, including an attorney fee of twenty-five dollars."

Judgment was entered in accordance with the eighth clause.   Respondent brings the case here for review.

We do not think it is necessary to go, in our investigation, beyond the first exception taken in this case. Had the probate court any jurisdiction in the matter? Could it, after the lapse of six years, set aside a final decree settling the account of an administrator, and renew a contest over items which, perhaps, had been litigated for years before the final decree was obtained? We think not. The probate court derives none of its jurisdiction or power from the common law, but must find the warrant for all of its doings in the statute. Its jurisdiction, powers, and duties are prescribed by law. Art. 6, § 13, Const.; How. Stat. c. 248.

The probate court possesses the power to adjudicate and settle, by the decree it may make, an administrator's account; but after the merits have been thus passed upon, and the final adjudication put in the form of a decree, we find no authority given to the probate court to review such decree, or to set the same aside. It is not a question of irregularity, or an aggrievance based upon an *ex parte* order, nor is it the exercise of a power incidental and necessary to the proper discharge of any duty or power conferred upon the court, but really an assumption of jurisdiction to set aside a decree settling an administrator's account of about $6,000 with the estate, made more than six years before, and retry the whole issue upon its merits. There is no statute or rule of practice, applying to proceedings in the probate court, authorizing any such action.

The statute has provided for an appeal to the circuit court,

within a reasonable time, when either party shall desire a retrial upon the merits. The probate court, in this case, was wholly without jurisdiction, and the circuit court could obtain none by the appeal.

The motion of counsel for the respondent, when the cause was called for trial, to dismiss the appeal, raised the jurisdictional question, and should have been granted. The order made by the circuit judge will therefore be reversed, and the petition dismissed, with costs of both courts.

CAMPBELL, C. J., concurred with SHERWOOD, J.

CHAMPLIN, J. I concur in the result. The action taken would be, in effect, to extend the time for taking appeals from the orders and decrees of probate courts indefinitely. But if the findings of fact made by the circuit judge are supported by the evidence, they have an ample remedy in a court of equity.

MORSE, J. (*dissenting*). Jeremiah Grady died intestate November 14, 1872, leaving a widow, Isabella Grady, and five children, four of whom, Patrick C., Margaret, Angie, and Frances H., were minors. Frances H. died in 1877, aged about six years. The deceased left an estate valued at about $6,000. March 3, 1873, the respondent, Michael H. Hughes, was appointed administrator, qualified, and entered upon the discharge of his duties. On the twenty-ninth day of March, 1878, he filed his final administrative account in the probate court. On the settlement of said account he was allowed credit, among other items, the following:

1. One hundred dollars for a monument.
2. Ten dollars for a burial lot.
3. Eighteen hundred dollars for three city lots sold by him to the widow, Isabella Grady, and deeded to her.
4. One hundred and thirty dollars paid St. Andrew's Church.
5. Fourteen hundred fifteen dollars and thirty-six cents "paid Mrs. Grady as guardian."

June 27, 1883, the judge of probate entered an order dis-charging Hughes as administrator.

The final account, as presented and allowed, brought the estate in debt to said administrator in the sum of $173.19. The children never received a cent from their father's estate, except shelter, food, and raiment while living with their mother, with whom they resided. Patrick C., from the time of his father's death, worked out, and earned good wages, which he delivered to his mother to use for the support of the family; and Margaret, from the time she was 15 years of age, worked out, and received wages, which were delivered to her mother for the support of her family.

July 5, 1884, three of the children, Patrick C., then 26 years of age, Margaret, 23 years old, and Angie, of the age of 20 years, petitioned the probate court of Kent county to set aside the order allowing the final account of said administrator, and praying that he might be cited to appear in said court, and render an account in writing of his administration of said estate, and an itemized account of his receipts, expenditures, and disbursements. The petitioners alleged that the account allowed was false, fraudulent, and illegal, and set forth the facts upon which they based such allegation. The respondent answered, and upon a hearing the probate court refused to set aside the account, or to reopen it, and made an order dismissing the petition.

The petitioners appealed to the circuit court for the county of Kent. In that court an issue was framed, the petition and answer furnishing the pleadings of the parties upon which the issue was joined. The circuit judge, Hon. R. M. Montgomery, upon a trial of such issue without a jury, found as follows in reference to the items in the administrator's final account heretofore mentioned:

"That said Michael H. Hughes never represented to said probate court, nor at any time claimed, that the items of $100 for a monument, and $10 for a burial lot, had been paid

by him, but that said items were inserted in said account by
said probate register, with the knowledge and at the sugges-
tion of said judge of probate, as items of expense, for the
purpose merely of showing what the remainder of the estate
should properly be going to said minors; that no fraud was
practiced upon said court in the matter of said items, nor
does the account indicate that the money was claimed to have
been paid at the time of the accounting."

*Third Item.* "That the charge of $1,800 was for the deed
of three vacant lots in Grant's addition to the city of Grand
Rapids, deeded by said Michael H. Hughes and wife to Isa-
bella Grady; that said deed was made under the following
circumstances: Mrs. Grady was desirous of making an in-
vestment for her children. She went to Benjamin A. Harlan,
the then judge of probate for the county of Kent, and con-
sulted and advised with him as to the purchase of said lots
from Mr. Hughes. She expressed herself as thinking that it
would be a good investment for her children; that there
would be an increase in the value of said property that would
be better for them than to put the money at interest. She
discussed with said judge of probate as to how the title
should be taken, and under his advice took it in her own
name, for the benefit of her children, in order that, when
there was occasion to sell, she might do it without expense.

"That said Michael H. Hughes was present at said inter-
view between said Isabella Grady and the judge of probate,
and also consulted said judge of probate as to the transfer of
said three lots, and was advised by said judge of probate that
he, said Hughes, might let her have said lots, and that it
would be all right. When said deed was made, the said
Michael H. Hughes was owner of said lots in his individual
capacity, and they were worth not to exceed $1,200; and the
said deed was made to said Isabella Grady in her individual
capacity, and there was no consideration paid for said deed;
but on account thereof said Michael H. Hughes assumed to
and did charge in his favor, and against the said estate, the
sum of eighteen hundred dollars, and did take the sum of
eighteen hundred dollars of the moneys of said estate, and
convert the same to his own use; and the said deed was and
is the only consideration and foundation for said charge
against the said estate.

"That at the time of the allowance of said administrator's
final account the then judge of probate of said probate court
was Cyrus E. Perkins, and that said judge of probate was
fully acquainted with all the facts and circumstances con-

nected with the transfer of said lots, and the item of $1,800 charged in said administrator's final account.

"That said administrator never in any way deceived, nor attempted to deceive, said probate court as to the character and nature of said $1,800 charged in said final account, but that the character and nature of said transaction was by him fully explained and made known to said probate court, both before and at the time of the allowance of said account. None of said lots, or any proceeds thereof, ever were had or received by said petitioners, or either of them, and the said charge of $1,800 is wholly fraudulent in law; and the inserting said charge in said account, and procuring the said probate court to allow the same, was a legal fraud; and the said order allowing said account, in which said charge was included, was and is illegal, unauthorized, and a legal fraud, and ought to be declared void.

"That said Isabella Grady, after receiving the deed of said lots, mortgaged said lots for the sum of $500; that one of said lots was sold by her for $350; that the title to all of said property has been parted with by the said Isabella Grady.

"That the greater part of the proceeds derived by the said Isabella Grady from the mortgaging and sale of said lots was used by her in the support and maintenance of her household, of which the petitioners in this case were and still are members. The consideration of said deed was not the distributive share in said estate of said Isabella Grady."

*Fourth Item.* The $130 paid to St. Andrew's Church was money paid by said administrator, at the request of the widow, on a note given by said Jeremiah Grady, in his lifetime, to certain sisters of charity. The note was not taken up, and no evidence was offered to show that St. Andrew's Church was entitled to receive pay upon it. It was paid by the administrator in good faith.

The *fifth item* of $1,415.36 is wholly false and fictitious. The administrator did not pay any money to her as guardian.

"Neither of said petitioners had any notice or knowledge of said final account, of the hearing thereof, or of its final allowance, until about the first day of January, A. D. 1884."

The court also found, as conclusions of law, that—

1. The payment of the $130 to St. Andrew's Church was unauthorized, it never having been proved as a debt against the estate.

2. The charge of $110, never having been paid by the administrator, was not a legal one.

3. The charge of $1,800 was not a legal one. The administrator could not lawfully account for said $1,800 in his hands, belonging to said estate, by such deed. Said lots not being worth over $1,200, the disposition of said lots by said deed was a legal fraud upon the probate court and the petitioners.

4. The petitioners, being minors at the time of the allowance of the final account, and not being present or represented by any guardian, are lawfully entitled to be now heard on the question of the allowance of said final account.

5. The order allowing such final account should be vacated and set aside, and the said Michael H. Hughes cited and required to appear before the probate court, on a day to be named, to render his final account.

An order was made in accordance with the finding of the court, that the cause should be remanded to the probate court to carry out the judgment of the court. The action of the circuit court is brought here for us to review upon writ of error.

At the beginning of the proceedings in the circuit court a motion was made to dismiss the appeal, on the ground that the probate court had no jurisdiction to act in the premises, and also that the order appealed from was not appealable. I cannot agree with the other members of the Court in the opinion that the probate court has no power to vacate or set aside its own order or decree, when satisfied that such order or decree has been obtained by fraud, or is the result of a mistake. I am not prepared to establish the proposition that the probate court has no more power in this respect than a justice of the peace. It has been held heretofore by this Court that the probate court, in adjusting the accounts of administrators and executors, is governed by broad principles of equity; and that a "very large portion of the old equity jurisdiction has been vested in the courts of probate." *Brown v. Forsche,* 43 Mich. 501; *People v. Wayne Circuit Court,* 11 Id. 393.

The right of a court of equity to correct its own mistakes, or to relieve a party from a fraud practiced upon the court, is well settled.

It is suggested that the remedy of these children against the fraud upon them is in equity, but the tenor of the former decisions of this Court has been uniformly adverse to the interference of equity with probate proceedings. *Green v. Probate Judge,* 40 Mich. 244; *Shelden v. Walbridge,* 44 Id. 251; *Dickinson v. Seaver,* Id. 624, 630.

The opinion of my Brother SHERWOOD precludes the judge of probate, after hearing and settlement of an executor's account, in a contest upon the merits of such an account, and an order entered thereon, from any further proceeding to amend or alter such order. In other words, if he should enter an order to-day allowing an administrator's final account, and should ascertain to-morrow that there had been a gross mistake, involving thousands of dollars, or a bare-faced intentional fraud practiced upon him, by which the estate of the decedent was cheated out of a large sum of money, he would have no power whatever to rectify such mistake, or to relieve such estate from such palpable fraud; but somebody, in behalf of the minor children, who may be, as in this case, without guardian, and without any notice of such settlement, mistake, or fraud, must appeal to the circuit court within the specified statutory time, or be relegated to a court of chancery, having, by our own decisions, a doubtful jurisdiction, or forever lose their rights.

I cannot and shall not interpret the law in this way. Such interpretation can only serve to make more secure and certain the defrauding of infants of the patrimony of their deceased parents by executors and guardians, now frequent and safe enough, as the constant controversies in our courts make apparent. There are now too few safeguards and barriers of the law erected to preserve to these orphans the money and property which their parents have toiled for and saved for

their benefit; and the instances are too frequent where they are robbed by those who should protect them, and the law is powerless to defend them or to restore to them their rights. I shall not make the way any easier to defraud them, or restrict their remedy against such wrong.

I believe that the probate court has full power, upon application, and showing of mistake or fraud, to vacate or set aside its orders and decrees, especially in the settlement of estates, and as completely and perfectly as a court of equity could do under like circumstances; and that the tendency of our decisions heretofore, as to the powers of the probate court in such cases, is in accordance with my belief; and that the circuit courts have power, upon appeal, if the probate court refuses to vacate an order or decree like the one in this case, if satisfied there has been mistake or fraud, to review the proceedings, and make an order like the one entered here by the circuit court for the county of Kent.

The appeal is given by statute, which provides that, "in all cases not otherwise provided for, any person aggrieved by any order, sentence, decree, or *denial* of a judge of probate may appeal therefrom to the circuit court for the same county."[1] We held in *Goss v. Stone*, 63 Mich. 319, that this language was broad enough to cover any order which affects the merits of a proceeding.

It may be, in the present case, that by their own laches one or two of these heirs have lost the right to rectify this wrong. But I do not think so, for the reason that the circuit judge finds they knew nothing of this settlement until January, 1884. That they have been, under the forms of law, deprived of a large sum of money that honestly belongs to them, and to no one else, is undisputed. I cannot sanction such proceedings by cutting off what seems to me to be the remedy intended by our laws.

---

[1] How. Stat. § 6779.