HULL v. HULL.

1. WILLS — CONTRACT BETWEEN EXECUTOR AND LEGATEE — CANCELLATION — UNDUE INFLUENCE.

On a bill by an executrix and legatee against her co-executor to cancel a contract between them by which the entire management of the estate was to be given to defendant and complainant was to accept a specified sum per year in lieu of the provision for her support contained in the will, evidence examined, and *held*, that complainant failed entirely to support her contention that she was deceived or misled or did not understand the contract when she signed it.

2. SAME — VALIDITY OF CONTRACT.

A will provided that testator's widow should receive the entire income of the estate and such further sum from the principal as should be agreed upon by the executors or ordered by the court, as her necessities might require, and appointed the widow and a nephew executrix and executor. By a contract consented to in writing by all others interested in the estate, it was agreed that the executrix should have a stipulated sum annually and an additional allowance if her necessities required it in lieu of the provision for her support contained in the will, and that the executor should have the entire management of the estate. *Held*, that the contract was a fair contract, and that it was competent for the parties to enter into it.

3. SAME — ALLOWANCES TO LEGATEE — CONSTRUCTION.

The provision for an additional allowance, in case her "actual necessities" should require it, has reference to the necessities for support and comfort provided for in the will, and does not invalidate the agreement as depriving the legatee of rights given her by the will.

4. COURTS — JURISDICTION — CONFERRING BY CONSENT — PROBATE COURTS.

A contract between a legatee, for whom provision for support was made by the will, and the executor, under which the legatee agrees to accept, in lieu of the provision for support, an annual allowance, and such further sum in case of actual necessity as the probate court should allow, is invalid as to the provision respecting application to the court, since the

court would not have jurisdiction independent of the contract, and consent cannot confer jurisdiction of the subject-matter.

Appeal from Eaton; Smith, J. Submitted June 18, 1907. (Docket No. 58.) Decided September 20, 1907.

Bill by Margaret A. Hull against John Hull, executor of the last will and testament of Tyler Hull, deceased, to set aside a contract on the ground of fraud. From a decree dismissing the bill, complainant appeals. Modified and affirmed.

*Black, Reasoner & Hayden* and *S. B. Roe,* for complainant.

*Huggett & McPeek,* for defendant.

BLAIR, J. Complainant and defendant are joint executors of the last will and testament of Tyler Hull, deceased. The will was construed, upon a bill of complaint filed by the above-named complainant for that purpose, in *Hull* v. *Hull,* 122 Mich. 338. After that decision, and on July 25, 1901, " Margaret A. Hull, as executrix named in the last will and testament of Tyler Hull, deceased, and as a legatee named in said will, as party of the first part, and John Hull as executor named in said will, of the second part," entered into an agreement in writing reciting that:

" Whereas by the terms of said will of Tyler Hull, deceased, the said party of the first part as a legatee named therein, is to receive the income of said estate and such further sum to be paid out of the principal of said estate as may be agreed to by the said executors or ordered by the court, as her necessities may require, for the purpose of saving expense to said estate, this agreement is made."

The agreement provided, in substance, that the executor John Hull should "perform the entire work as executor of said estate for the sum of two hundred dollars per an-

num;" that the executrix should surrender the entire management to her co-executor and continue as a nominal executrix, her bond being reduced to the sum of $1,000, and she to receive no compensation as executrix—

"That said Margaret A. Hull shall have and receive from the said estate the sum of one thousand dollars per annum to be paid to her by the executor of said estate as the income thereof, the same to be paid to her quarter yearly, the first payment to be made three months from the date this contract takes effect, and up to the date this contract takes effect she is to have the income of said estate to be ascertained and paid to her, that such quarter yearly payments of two hundred and fifty dollars each, together with the use of the dwelling house and premises and the personal property now in use therewith shall be in lieu of all her interest as legatee named in said will, provided, however, that in case her actual necessities by reason of ill health or otherwise shall necessitate a greater sum shall be paid to her, the said Margaret A. Hull shall have the right to apply to the probate court for such additional allowance as may be necessary without in any way invalidating the other provisions of this contract."

That all taxes should be paid by the estate, but Mrs. Hull should pay for real estate repairs. The agreement was also signed by the other legatees.

The primary purpose of the bill of complaint in the present suit is to set aside this agreement. The specific prayers for relief are as follows:

"2. That the court may assume jurisdiction of the rights and claim of your oratrix as above set forth, and determine whether said agreement, Exhibit B, should be binding on your oratrix, and

"3. That the court may decree the same void and of no effect; and that it be canceled.

"4. That the defendant may be decreed at once to pay to your oratrix out of said estate the sum of about four hundred dollars and thereafter to make quarterly payments of three hundred and seventy-five dollars each quarter, or such sums as to the court may seem just, at the time and place required in said contract or agreement described herein as Exhibit B, and in lieu of the payments therein mentioned."

The parties had acted under the agreement for nearly five years prior to the filing of the bill of complaint.

The reasons set up for invalidating the agreement, as stated in the bill, are, in substance, that, at the time she signed it, she was in a state of nervous collapse and in ill health and was unable to and did not understand the import and effect of the agreement; her attorney falsely represented to her "that the judge of probate of said county of Eaton, under whose direction and supervision your oratrix had been administering said estate, had directed that she sign said instrument and that it was necessary and advisable for her to do so;" that the provision that she should surrender the management and not interfere with the assets of the estate was against public policy; that no consideration has been paid to which she would not have been entitled under the terms of the will.

The circuit judge dismissed the bill of complaint for the reason, as stated in his opinion:

"That the disposition of this case hinges upon what the court finds as to the fact regarding the execution of the contract which she seeks to set aside and have the court declare void.   That if she is not entitled to have this done, this court has no jurisdiction to give to her the relief she asks regarding an increase of her allowance but that her remedy is to apply to the probate court under the contract for additional allowance.

"I do not think any good purpose will be served in a discussion of the evidence taken.   It is sufficient to say in disposing of the case that I am of the opinion she has failed entirely to support her contention that she was deceived or misled, or did not understand this contract which she signed.   I am of the opinion that at the time she fully understood it and knew what she was doing and was in no way coerced or deceived."

Complainant appeals to this court.

The questions involved are stated by counsel for appellant, as follows:

"The principal question raised by the pleadings and proofs is whether or not the complainant is entitled to a greater allowance than she has been receiving.   This

question it is claimed does not depend on the validity of the contract referred to as Exhibit B. Incidentally, another question involved is, whether or not the contract, Exhibit B, should be held to bind the complainant, the claim of the complainant's solicitors being that it should not be held to limit her, for the following reasons:

"*First.* Because her consent was, owing to her illness and consequent mental incapacity, never obtained in a manner which would constitute a valid meeting of minds.

"*Second.* Because the contract being between a trustee and the cestui que trust, and the trustee being interested as a legatee under the will in the subject-matter concerning which the contract was made and since he receives an advantage from it, the contract, except in so far as it was required by the terms of the trust, is invalid, because it is not fair or conducive to the best interests of Mrs. Hull.

"*Third.* Because the agreement was wholly without consideration."

We agree with the circuit judge that the primary question presented by the pleadings and proofs concerns the validity of the agreement, and we also agree with him in the finding that "she has failed entirely to support her contention that she was deceived or misled or did not understand this contract which she signed."

We are satisfied, after a careful consideration of the testimony, that complainant's attorneys acted in good faith in advising her to sign the contract, and that, as a matter of fact, she acted wisely in following their advice. At the time the contract was executed, and for a considerable time prior thereto, the relations between complainant and defendant were unfriendly, and, because of their inability to agree, several thousands of dollars had been expended in litigation over the construction of the will and the settlement of their respective accounts. As complainant testified, "We never agreed on anything." Under the will, it was essential that the executors should agree, and, in view of the hostile relations between them, they acted prudently in entering into the agreement in question "for the purpose of saving expense to said

estate," if the law permitted such a contract to be made.

In determining the validity of this agreement, it is important to bear in mind that its execution by complainant and defendant was consented to in writing and bore the signatures of all the other parties interested in the estate under the will and who were all competent to contract. The apparent purpose of the agreement is not to overturn the will or radically change its provisions but to make definite, so far as possible, the provision for complainant's comfortable support, which, under the will, would probably vary from year to year and might be seriously impaired by litigation reasonably certain to arise between the executors. It is conceded by counsel for complainant, and the record clearly indicates, that a diminution of the principal of the estate is reasonably certain and the principal may be entirely exhausted before the death of complainant, though this is, perhaps, not probable. It may, however, be reasonably anticipated that the income will fall considerably short of $1,000 a year, since it is now necessary to use a portion of the principal, and contingencies may arise to diminish the principal. Under the contract, however, the complainant is assured of $1,000 a year and her home and its personal property to the end of her life, although the entire income-producing estate may be exhausted. It is further to be considered that the will contemplated the comfortable support of complainant during her natural life, and in determining the amount needed for such comfortable support, some reference must be had to the probable duration of her life.

It is further urged that the contract limits complainant's right to further allowances to cases of actual necessity. Whether such limitation would invalidate the contract, we need not determine, since we are of the opinion that the provision relative to "her actual necessities," contained in the fifth clause of the contract, should be construed to refer to the same necessities mentioned in the recital of the first clause, being the necessities for support and comfort provided for in the will.

In view of all the circumstances, the unfriendly relations of the parties, and that there were no creditors interested, we think the contract was a fair contract, whose enforcement will be much more for the benefit of the parties than its cancellation, and, apart from the provision hereafter referred to, that it was competent for the parties to enter into it. *Foote* v. *Foote,* 61 Mich. 181; *Letts* v. *Letts,* 73 Mich. 138; *Bean* v. *Bean,* 144 Mich. 599.

It is also contended that the probate court has no jurisdiction to determine the needs of complainant and the provision giving such jurisdiction invalidates the contract. We are of the opinion that this contention is well founded and must prevail. Independent of the contract, the probate court would not have jurisdiction. *Knorr* v. *Millard,* 52 Mich. 542; *Hull* v. *Hull,* 122 Mich. 338. And jurisdiction of the subject-matter cannot be waived nor conferred by consent. 11 Cyc. pp. 673, 697; *Kirkwood* v. *Hoxie,* 95 Mich. 62; *Hagar* v. *Coup,* 50 Mich. 54.

We think that the allowance of $1,000 a year, payable quarterly, as provided in the contract, is a reasonable and proper allowance, but, in addition thereto, complainant will be allowed the amounts expended or agreed to be paid for putting in the furnace, reconstructing the tenant house, erecting the wind-mill, digging the drain and introducing the water system into the house, which improvements we think were reasonably necessary for her comfort. If the parties cannot agree as to the amounts to be so allowed for the improvements, a reference may be had to a circuit court commissioner to determine the same.

A decree may be entered in accordance with this opinion, with costs of this court to complainant.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.