DRIVER *v.* UNION INDUSTRIAL TRUST & SAVINGS BANK.

EXECUTORS AND ADMINISTRATORS—ABSENT HEIR—JURISDICTION OF PROBATE COURT—EQUITY—STATUTES.

In suit by son, who had been absent and unheard of for more than 10 years, to set aside orders of probate court in administration of his deceased father's estate, in which plaintiff was not included as heir, for accounting and other relief, on ground that provisions of statute (3 Comp. Laws 1929, § 15624 *et seq.*) were not complied with, decree dismissing suit is affirmed, on appeal, by equally divided court.

Appeal from Genesee; Parker (James S.), J. Submitted January 11, 1933. (Docket No. 109, Calendar No. 37,007.) Decided June 29, 1933. Rehearing denied August 29, 1933.

Bill by Raymond Driver against Union Industrial Trust & Savings Bank and others to set aside order of probate court determining heirship and assigning residue, for an accounting and other relief. Bill dismissed. Plaintiff appeals. Affirmed, by an equally divided court.

*Farley & Elliott,* for plaintiff.

*Brownell & Gault,* for defendant Union Industrial Trust & Savings Bank.

SHARPE, J.   Alanson Driver departed this life at the city of Flint on April 3, 1929.   The defendant Union Industrial & Savings Bank is the successor to the Bankers Trust Company, which was appointed administrator of his estate on petition of his widow, Addie Driver, in which she stated that the heirs of said deceased were herself as widow and the other individual defendants, who were brothers, nephews, and nieces of the deceased.   The plaintiff, Raymond Driver, was a son of the deceased.   He had left his parents' home in Toledo, Ohio, in 1910, when 18 years of age.   He joined the navy, and was discharged therefrom in 1914.   He sailed on an army transport, named the Findland, in 1917–1918.   He had no correspondence with his parents thereafter. He first learned of his father's death in March or April, 1932.   He soon after came to Flint, and found that the estate had been administered, the final account of the administrator allowed, and a determination of heirs had and distribution ordered on February 20, 1930, in which he was not included.

He filed the bill of complaint herein June 25, 1932, alleging that the proceedings taken for the distribution of the estate, except as to the share thereof of his mother, were in violation of the provisions of Act No. 205, Pub. Acts 1925 (3 Comp. Laws 1929, § 15624 *et seq.*), and praying that the administrator be required to account to him for the moneys unlawfully disbursed by it, and that the other defendants, who had been awarded interests in the real estate owned by the deceased, be required to quitclaim the

same to him, or, in lieu thereof, that the decree might be recorded as a conveyance to him. From a decree dismissing his bill he has taken this appeal.

The record discloses that on February 20, 1930, the judge of probate made an order determining who were the heirs of the deceased. It recites that a petition therefor had been presented to the court. This petition does not appear in the record. The order recites that "due notice of the hearing on said petition having been given as directed by said court." At the hearing thereon it appears that the widow and all of the other heirs were at that time either present or represented by attorneys. This order contains the following:

"The court further finds that Raymond Driver, son of Alanson Driver, deceased has not been heard from by his parents, Adeline Driver and Alanson Driver, deceased, or by other persons most likely to hear from him were he alive, since 1917. That he was on friendly terms with his parents at that time. That correspondence had been carried on between them and the correspondence on his part suddenly ceased. That he was in the service of the United States navy during the war and it is believed he was killed. That because more than seven years have elapsed he is presumed to be dead."

This finding was based upon the testimony of the widow. We quote from the "stipulation of facts:"

"At this hearing the widow testified in part that she had had four children by Mr. Driver, that she knew three of them were dead, but did not know whether or not the fourth one was living, and that she had not heard from him since 1917, at which time he was just about to sail on the boat, Findland; that he was in the navy; that he had quit corresponding; and that she had not heard from him since. That

she had written the navy department and that they could not trace him. That the O. R. C. where he carried insurance had been unable to find him and that 'he was just about to come home on a furlough when he was ordered to sail and he says if anything happens to me mother, you will have some insurance.' ''

This was followed by a determination that the widow and the heirs above referred to ''were the legal heirs of said deceased and entitled to inherit the real estate of which said deceased died seized.'' On the same day an order assigning the residue of said estate was made by the probate judge. It recites that it was made pursuant to a petition therefor and that the widow and heirs were present or represented by attorneys. This petition does not appear in the record. The order of assignment recites that it was made pursuant to a stipulation signed by all of the persons whom the court found to be entitled. No mention was made of the plaintiff therein.

Counsel for the plaintiff contend that the provisions of sections 16 and 17 of said Act No. 205 (3 Comp. Laws 1929, §§ 15639, 15640) were not complied with, and that the court was without jurisdiction to make these orders.

Section 16 provides that when a person who has been absent for seven years, and whose whereabouts are unknown, is an apparent beneficiary of a deceased person, the estate shall not be distributed until three years after the death of the decedent.

Section 17 provides that, when the question of the existence of such a beneficiary is presented to the probate court, it may, upon its own motion, frame an issue thereon and determine whether or not the apparent beneficiary is in existence, that is, living, at that time. If he determines that he is not, then the estate may be distributed notwithstanding the

provisions of section 16. Unless this construction be placed upon section 17, there would seem to be no reason for its inclusion in the statute.

The proof submitted on the issue to be determined by the court must show, not only that the apparent beneficiary has—

"been absent from his or her last-known place of abode for the continuous period of seven years with his or her whereabouts unknown to those persons most likely to know thereof, and who has not been heard from by such persons during said period,"

as set forth in section 16, but must warrant a finding of presumptive death. The law does not require that testimony submitted in the probate court shall be taken by a stenographer. We have quoted from the "stipulation of facts" the testimony of plaintiff's mother, on which the order made was based.

If she had had any idea at that time that plaintiff was then living, she, above all others, would have sought to protect his interest by casting doubt upon the presumption that he was dead, and, had she done so, the finding of the court would not have been made. A son, no matter how wayward, owes some duty to the parents who have reared him. Plaintiff's relations with his mother were apparently at all times friendly. He kept her advised as to his whereabouts for several years after he left her home in Toledo. In 1917 he embarked on what he led her to believe was a perilous voyage, as a result of which she might be entitled to insurance on his life. For 13 years thereafter she had had no word from him, nor had the navy department or the insurance company been able to trace him. In our opinion her testimony warranted the finding of the trial court as quoted above.

Counsel for the plaintiff contend that the provisions of section 17 requiring the framing of an issue and the appointment of a guardian *ad litem* were not complied with, and that the court was therefore without jurisdiction to make the order in question. While the record does not disclose that a formal issue was framed, the finding of the court shows clearly that the question which would have been presented thereby was passed upon and decided. The omission in this respect in no way affected the jurisdiction of the court, which is a court of record.

This section also provides that when an issue is framed a guardian *ad litem* ''to represent the possible absent beneficiary'' shall be appointed. This should have been done, but under the proof submitted the rights of the plaintiff were in no way affected by the omission to do so.

In *Calhoun* v. *Cracknell,* 202 Mich. 430, where a similar question was raised, this court expressed its approval of the opinion of the trial court, in which it was said (p. 436):

''The court having jurisdiction to distribute the estate and to construe the will for the purpose, the failure to appoint a guardian *ad litem* for a minor could be no more than an irregularity of procedure. It is fundamental that an irregularity, not jurisdictional, even though sufficient to require the vacation of a judgment on direct attack, does not affect its force when questioned in another proceeding. If the appointment were necessary, the judgment would be, not void, but merely voidable.''

This court has many times passed upon the binding effect of orders of the probate court made in the administration of estates, and has uniformly held that review may be had only in the manner provided for in the statute. *Calhoun* v. *Cracknell, supra;*

*Chapin* v. *Chapin,* 229 Mich. 515; *Thompson* v. *Thompson,* 229 Mich. 526; *Raseman* v. *Raseman,* 234 Mich. 237; *Benjamin* v. *Fairchild,* 242 Mich. 274.

It is urged that a great injustice will be done to plaintiff if he be deprived of the property to which he would be entitled as an heir of his father. It would seem, however, that under the circumstances an even greater injustice would be done by requiring the trust company, which acted as administrator of his father's estate and made distribution of the personal estate as ordered by the probate court, to account to him for the money paid by it pursuant to such order.

The decree is affirmed, with costs to appellee.

CLARK, WIEST, and BUTZEL, JJ., concurred with SHARPE, J.

POTTER, J. Plaintiff filed a bill to set aside an order of the probate court determining heirship, assigning residue, accounting, and to recover property which he claims belongs to him as sole heir of his father, Alanson Driver, deceased. From a decree for defendants, plaintiff appeals. Plaintiff was absent from Flint, where his father lived and died. He had not been heard from for more than 10 years, and was supposed to be dead. He had no actual notice of his father's death or the administration of his estate.

(1) Plaintiff's rights are barred, if at all, by action of the probate court, in pursuance of Act No. 225, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 15624–15653), which statute is valid and exclusive. *Scott* v. *McNeal,* 154 U. S. 34 (14 Sup. Ct. 1108); *Cunnius* v. *Reading School District,* 198 U. S. 458 (25 Sup. Ct. 721, 3 Ann. Cas. 1121); *Blinn* v. *Nelson,* 222 U. S. 1 (32 Sup. Ct. 1, Ann. Cas. 1913 B, 555). Plain-

tiff's right to recover may be barred only by compliance with the statute, which, being in derogation of the common law, must be strictly construed and rigidly followed.

(2) The probate proceedings which are claimed to have deprived plaintiff of his interest in his father's estate were without jurisdiction and void. Alanson Driver, plaintiff's father, died April 3, 1929. February 20, 1930, 10 months and 17 days after the father's death, his estate had been administered, the administrator's final account allowed, a determination of heirship had, and a distribution of the estate ordered, February 20, 1930, in which plaintiff was not included. Distribution was immediately made, and defendants' rights are based upon this order and distribution made in pursuance thereof. June 25, 1932, the bill of complaint was filed.

(3) Probate courts have general jurisdiction of testamentary and other probate matters. *People, ex rel. Campau, v. Wayne Circuit Court,* 11 Mich. 393 (83 Am. Dec. 754); *Church v. Holcomb,* 45 Mich. 29; *Alexander v. Rice,* 52 Mich. 451; *Morford v. Dieffenbacker,* 54 Mich. 593; *Schlee v. Darrow's Estate,* 65 Mich. 362; *Fingleton v. Kent Circuit Judge,* 116 Mich. 211; *Reason v. Jones,* 119 Mich. 672. They were unknown to the common law, and derive all their power and authority from the statutes creating them. They must find warrant for all their acts and doings in the statute. *Grady v. Hughes,* 64 Mich. 540; *Scholten v. Scholten,* 238 Mich. 679. An absolute want of jurisdiction to perform a judicial act cannot be waived. *Hull v. Hull,* 149 Mich. 500; *Attorney General, ex rel. Wolverine Fish Co., v. A. Booth & Co.,* 143 Mich. 89; *Thompson v. Michigan Mutual Benefit Ass'n,* 52 Mich. 522; *Woodruff v. Ives,* 34 Mich. 320; *Attorney General, ex rel. Lock-*

*wood,* v. *Moliter,* 26 Mich. 444; *Moore* v. *Ellis,* 18
Mich. 77; *Farrand* v. *Bentley,* 6 Mich. 281; 15 C. J.
p. 844. The acts and doings of the probate court of
Genesee county were not in conformity with the stat-
ute. They were directly contrary to its plain and
positive provisions and prohibitions. The defect is
apparent on the face of the probate proceedings,
which proceedings ordering and directing the dis-
tribution of the personal property and the assign-
ment of the real estate of plaintiff's deceased
father to plaintiff's exclusion, were in clear violation
of the statute governing the same.

(4) A probate court has no power or authority to
set aside its own orders and decrees. *Hitchcock* v.
*Genesee Probate Judge,* 99 Mich. 128; *Grady* v.
*Hughes, supra; Holden* v. *Lathrop,* 65 Mich. 652.
But a court of equity has jurisdiction to set aside an
order of the probate court made without jurisdiction
or authority. *Frost* v. *Atwood,* 73 Mich. 67 (16 Am.
St. Rep. 560); *Lothrop* v. *Duffield,* 134 Mich. 485;
*Ewing* v. *Lamphere,* 147 Mich. 659 (118 Am. St. Rep.
563); *Ombrello* v. *Railway Co.,* 252 Mich. 396.

(5) It is claimed the probate court had jurisdic-
tion of the subject matter and the parties, and its
finding and judgment is final and conclusive.

"Jurisdiction, in its fullest sense, is not restricted
to the subject-matter and the parties. If the court
lacks jurisdiction to render, or exceeds its jurisdic-
tion in rendering, the particular judgment in the par-
ticular case, such judgment is subject to collateral
attack, even though the court had jurisdiction of the
parties and of the subject-matter. This meaning of
jurisdiction is recognized by this court in *Smith* v.
*People,* 2 Col. App. 99 (29 Pac. 924); *Newman* v. *Bul-
lock,* 23 Col. 217 (47 Pac. 379); *Tebbetts* v. *People,*

31 Col. 461 (73 Pac. 869); *Tegeler* v. *Schneider,* 49 Col. 574 (114 Pac. 288); *Kilker* v. *People,* 68 Col. 174 (188 Pac. 744). The supreme court of the United States, the ultimate authority, has so ruled in *Windsor* v. *McVeigh,* 93 U. S. 274; *Ex parte Rowland,* 104 U. S. 604; *Ex parte Lange,* 18 Wall. (85 U. S.) 163. See, also, *Hovey* v. *Elliott,* 145 N. Y. 126 (39 N. E. 841, 39 L. R. A. 449 and notes), *id.,* 167 U. S. 409 (17 Sup. Ct. 841)." *People, ex rel. Arkansas V. S. B. & I. L. Co.,* v. *Burke,* 72 Col. 486 (212 Pac. 837, 30 A. L. R. 1085).

As said by the supreme court of the United States in *Windsor* v. *McVeigh,* 93 U. S. 274, 283, of the doctrine contended for, it "is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it."

Many of the illustrative cases are collected in *Hanson* v. *North Dakota Workmen's Comp. Bureau,* 63 N. D. 479 (248 N. W. 680). See, also, 15 C. J. p. 729; 1 Bailey on Jurisdiction, § 22; 1 Freeman on Judgments (4th Ed.), § 264.

"An illustration of the distinction between jurisdiction of the subject-matter in the technical sense, rendering a judicial determination, however erroneous, binding till impeached in some of the ways provided by law and a mere assertion or pretense of jurisdiction without any real foundation for it whatever, rendering the judicial determination in respect thereto utterly void, is found in *Melia* v. *Simmons,* 45 Wis. 334 (30 Am. Rep. 746); *Frame* v. *Thormann,* 102 Wis. 653 (79 N. W. 39); *Wisconsin Trust Co.* v. *Wisconsin Marine & Fire Insurance Co. Bank,* 105 Wis. 464 (81 N. W. 642); *Harrigan* v. *Gilchrist,* 121 Wis. 127 (99 N. W. 909); *Jordan* v. *Railway Co.,* 125

Wis. 581 (104 N. W. 803, 1 L. R. A. [N. S.] 885, 110 Am. St. Rep. 865, 4 Ann. Cas. 1113); *Griffith* v. *Frazier*, 8 Cranch (12 U. S.), 9; *Scott* v. *McNeal*, 154 U. S. 34 (14 Sup. Ct. 1108); *Cunnius* v. *Reading School Dist.*, 198 U. S. 458 (25 Sup. Ct. 721, 3 Ann. Cas. 1121)." *Hanson* v. *North Dakota Workmen's Comp. Bureau, supra.*

(6) It is contended plaintiff's rights are barred by the proceedings had in the probate court in his father's estate to determine heirship. In such proceedings the probate court shall, if the evidence be sufficient, "find and adjudge who are, or were, the heirs, minor heirs, or legal representatives of the deceased and entitled by the laws of this State to inherit the real estate of the deceased." 3 Comp. Laws 1929, § 15752. The statute also provides that such "finding and adjudication shall be entered on the journal of said court, and which entry, or a duly certified copy thereof, shall be *prima facie evidence* of the facts therein found." 3 Comp. Laws 1929, § 15752.

A subsequent section of the statute provides such certified copy of the finding and adjudication of the probate court may be recorded in the office of the register of deeds and "shall be *prima facie evidence* of the fact as to who were heirs of the said deceased person at the time of his death." 3 Comp. Laws 1929, § 15754.

Such finding and adjudication, in accordance with the statute, constitutes only *prima facie evidence. Prima facie* evidence under all the authorities is only evidence sufficient to establish a fact when it is not disputed or rebutted. 3 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 2683 and cases cited. It imports a certain result is temporarily established, but

such result may be disputed or repelled.  49 C. J. p. 1346 and cases cited.

(7) The attack made upon the proceedings of the probate court is a direct attack.

"A direct attack upon a judgment is by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated, or declared void." *Pope* v. *Harrison,* 16 Lea (84 Tenn.), 82.

See also, VanFleet's Collateral Attack, § 2, p. 4.

A bill in equity to set aside a judgment for fraud, mistake, or want of jurisdiction is a direct attack. VanFleet's Collateral Attack, § 2, p. 4.

(8) The statutes provide that proceedings to determine heirship, when concluded, constitute only *prima facie evidence,* and such *prima facie* evidence may always be rebutted and repelled.  There was no attempt to follow Act No. 205, Pub. Acts 1925 (3 Comp. Laws 1929, § 15624 *et seq.*), the only statute under which plaintiff's rights might be barred.  This act provides for the sale or disposition of the property of persons who have been absent from their last known place of abode for a continuous period of seven years, their whereabouts being unknown to those persons most likely to know, and who have not heard from such persons during such period of seven years; but under this act,

"Except for the purposes of paying taxes, special assessments, liens, insurance premiums, allowed claims for debts contracted by the absent person before his or her disappearance, or to prevent great depreciation on account of neglect, or to specifically fulfill contracts made by the absent person before his or her disappearance, no sale, mortgage, or other disposition of the property of the absent person shall

be had until the lapse óf one year after the appointment and qualification of the representative of his or her estate." 3 Comp. Laws 1929, § 15632.

"No distribution nor assignment to beneficiaries of the property or the proceeds thereof of the absent person shall be made in any event until after the lapse of one year after the appointment and qualification of the representative of his or her estate; nor shall such distribution or assignment be made until after the lapse of three years after the appointment and qualification of the representative of his or her estate, unless the distributee or assignee execute and deliver to the representative a surety company bond in a penal sum not less than the value of the property distributed or assigned and for such additional amount as the court may prescribe, to be approved by the probate judge"—conditioned as provided by statute. 3 Comp. Laws 1929, § 15633.

(9) 3 Comp. Laws 1929, § 15639, provides:

"Whenever any person shall die testate or intestate, leaving property in the State of Michigan to be administered, and one or some of the apparent beneficiaries of his or her estate is a person who has been absent from his or her last known place of abode for the continuous period of seven years with his or her whereabouts unknown to those persons most likely to know thereof, and who has not been heard from by such persons during said period, no distribution or assignment of that portion of the estate which would be distributed and assigned to the absent person, if alive, shall be made until the lapse of *three years after the death of the decedent.*"

Section 15641, 3 Comp. Laws 1929, provides for giving notice that "on a day certain *after the lapse of said period of three years* an order of assignment and distribution will be made by the court of the portion of the estate aforesaid to certain persons, nam-

ing them and their relationship, if any, to the decedent and the proportions of their shares in the portion of the estate to be distributed.''

Section 15642, 3 Comp. Laws 1929, provides:

''The notice described in the next preceding section shall be published in some newspaper in general circulation in the county once each calendar month *for four months* prior to the month containing the day certain when the order is to be made,'' etc.

These statutes were not complied with. Plaintiff's interest in his father's estate was turned over to others, illegally, by an invalid order of the probate court, issued without jurisdiction. The distribution of the estate made by defendants was in violation of plaintiff's rights. It was made in direct violation of statute. It amounts to taking his property without due process of law. To uphold the action of the probate court it is necessary to hold *prima facie* evidence conclusive evidence; the positive prohibition of the statute an implied authorization; that the probate court has full power and authority to do that which by statute it is prohibited from doing at all.

(10) The probate court had no jurisdiction to make the order of distribution. The administrators of the estate had no right to make distribution. There was no valid assignment of plaintiff's interest in the real estate. The action of the probate court and the proceedings taken amount to a confiscation of plaintiff's property. Decree should be reversed, with costs. Decree should be entered for plaintiff.

McDONALD, C. J., and NORTH and FEAD, JJ., concurred with POTTER, J.